

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable John Q. McAdams, Commissioner
Department of Banking
Austin, Texas

Dear Mr. Jamison:                    Attention:  Mr. H. A. Jamison

Opinion No. 0-4733
Re:  Construction of Article 2465,
Revised Civil Statutes of
Texas as amended by the 47th
Legislature, p. 1399, Chap.
634, Sec. 1, with respect to
the supervision of Rural Credit
Unions by the Banking Commis-
sioner.

You propound for a legal opinion from this De-
partment the following question:

"Specifically, therefore, we desire an
opinion from your office as to whether or
not the Commissioner has official authority
to issue an Order limiting or prohibiting
withdrawals in a credit union and/or requir-
ing funds, received for deposit or on pay-
ment of shares on or after a specified date,
to be segregated and treated as trust funds,
pending a complete and thorough determina-
tion of the financial condition of the union
under examination, provided said Commissioner
has reason to believe that a capital impair-
ment does exist, as a prerequisite to and a
basis for the issuance of such an Order."

Your inquiry involves the construction of Article
2465 of the Revised Civil Statutes of Texas governing credit
organizations, which Article, as it presently exists, is as
follows:

"Such credit union shall maintain such books and records as the Banking Commissioner may deem necessary. The Banking Commissioner shall cause each credit union to be examined at least once yearly, such examination to be made by (1) some competent person or persons designated by the Banking Commissioner, who shall be paid by the Banking Commissioner an amount not to exceed ninety (90) per cent of the fees as herein provided, which said fees shall be paid to said Banking Commissioner by the respective unions examined as provided by this Act as compensation for his or their services and as reimbursement for travel expenses and other expenses incurred; (2) by one or more credit union examiners, who shall be appointed by the Banking Commissioner and shall receive a salary of not exceeding Three Hundred Dollars ($300) per month, and shall be reimbursed for travel expenses in the sum of Four Dollars ($4) per day, plus cost of transportation, such examiners to retain their salary and expenses, as above provided out of fees collected by them as hereinafter provided; (3) or by the Deputy Commissioner, Departmental Examiner, any bank examiner, assistant bank examiner, building and loan supervisor or building and loan examiner, who shall receive and retain the fees collected by them as hereinafter provided, such fees so collected to be credited on the salary of the person collecting the same, so that such person shall in no event receive compensation in excess of his salary as provided by law.

"Each credit union examined shall pay an examination fee fixed by the Banking Commissioner not to exceed Twenty-five Dollars ($25) per day per person engaged upon such examination.

"All fees, as above provided, shall be paid by the credit union to the person or persons making the examination, and such persons shall make a monthly account to the Banking Commissioner of the fees so collected during the preceding month, fees in excess of those retained by the examiner as above provided shall be paid to the Banking Commissioner and by him deposited with the State Treasurer to be held in a special fund and used for the purpose of enforcing the provisions of this law.

Honorable John Q. McAdams, Commissioner, - page 3

"After September 1, 1943, the number of
the employees and the salaries of each shall
be as fixed in the biennial Departmental Appro-
priation Bill."

This Article defines the authority of the Banking
Commissioner with reference to the subject of supervision, to
which may be added that part of Article 2484, which requires
such associations to make to the Banking Commissioner certain
reports "in such form as he may prescribe."

It is fundamental that all public officers have such
powers only as are given to them by the Constitution or stat-
utes creating the office. Such powers must be conferred,
either expressly or by fair and reasonable implication.

It will be seen, as you point out, that Article 2465,
as presently existing, omits from the statute as it had previous-
ly existed the power of general supervision over such credit
unions. The powers of the Commissioner, therefore, in such re-
spect, consist only of those given in the statute, either ex-
pressly or by fair and reasonable implication.

We find nothing in the statutes that could be held to
include the power in the Commissioner to make the order or orders
described in your letter. The order purports to be one permitting
the credit union to operate upon a restricted basis rather than in
the normal way contemplated by the statute. Such an order, under
the circumstances described by you, undoubtedly would factually be
a very wholesome one if the same could be made, but this considera-
tion does not operate to confer power upon the Commissioner where
none otherwise exists.

You are therefore respectfully advised that in our opin-
ion your inquiry should be answered in the negative.

It would appear that the extent of your power and duty
would be to report the situation to the Attorney General for ap-
propriate action by this Department, in the event your examina-
tions should find that the credit union is insolvent.

Very truly yours

APPROVED JUL 31, 1942

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS
OS-MR

By

Ocie Speer
Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN